No. 85,290

STATE OF KANSAS, *Appellee*, v. KEVIN B. PETERSON, *Appellant*.

(42 P.3d 137)

Opinion filed March 15, 2002.

*Michael S. Holland,* of Holland and Holland, of Russell, argued the cause, and *Michael S. Holland II,* of the same firm, was with him on the brief for appellant.

*William R. Ludwig,* county attorney, argued the cause, and *Carla J. Stovall,* attorney general, was with him on the brief for appellee.

The opinion of the court was delivered by

ABBOTT, J.: This is a direct appeal by the defendant, Kevin B. Peterson, from his conviction by a jury of manufacture of methamphetamine. He had also been convicted of possession of methamphetamine with intent to sell, deliver, or distribute, and possession of a controlled substance with no drug tax stamp. The Court of Appeals reversed those convictions, but affirmed the conviction for manufacture of methamphetamine. Peterson petitioned this court for review of the Court of Appeals' affirmance of the trial court's denial of his motion to suppress and his conviction for manufacture of methamphetamine. We granted the petition largely because there was a conflict between this case and *State v. Martens,* 29 Kan. App. 2d 361, 28 P.3d 408 (2001). Our decision in *Martens* is also filed on this date.

The Kansas Bureau of Investigation (KBI) officers executed a search warrant on Steve Schmidt's home in rural Mitchell County, Kansas. When questioned, Schmidt indicated that the items found at the residence were part of a methamphetamine lab. Schmidt approached officers about making a deal with the prosecutor to inform on another methamphetamine manufacturer in return for dismissal of the charges against him. Later, after negotiating the deal to drop charges against him, Schmidt told KBI Special Agent Doug Younger that he was storing chemicals at his residence for Peterson and that when he had visited Peterson's house on June 24, Peterson was completing a batch of methamphetamine. In addition, Schmidt indicated that Peterson had a methamphetamine lab setup in the basement of his residence and also in a trailer north of his house.

After obtaining a search warrant, agents from the KBI and officers from Mitchell County, Osborne County, and the Hays Police

Department executed a search of Peterson's residence, also located in Mitchell County, Kansas. Agent Younger testified that officers utilized respirators and a gas meter during the search, and that the gas meter began making a loud shrieking noise at the front porch of the residence, indicating potentially explosive levels of ether or phosphine gas. Officers seized methamphetamine, pseudoephedrine tablets, and chemicals such as acetone and Coleman fuel. Peterson was not home at the time of the search, but was apprehended coming toward the residence by a deputy within a half mile of the house.

Agent Younger interviewed Peterson, and Peterson told Younger that he had been using methamphetamine for 10 to 15 years, purchasing 2 to 3 ounces at a time from a person in Nebraska. Peterson told Younger that he then would distribute the methamphetamine to his regular customers. He also indicated that during the month of May 1998, he had been collecting items to manufacture methamphetamine and gathering information from books and the Internet to learn how to manufacture it. Peterson said that since the time he learned to manufacture methamphetamine, Schmidt wanted Peterson to finish processing methamphetamine for him.

KBI Senior Special Agent Matt Lyon located four bottles of Mini-Thins, which contain ephedrine hydrochloride, a precursor chemical for the manufacture of methamphetamine, in a white purse in the bedroom where Peterson's wife was sleeping. He also found a porcelain funnel, a set of scales, and a bowl containing an off-white powder in the bedroom. On the top shelf of the bedroom closet, Lyon found the book "Methamphetamine, Third Edition, Uncle Fester."

Several items seized at Peterson's house tested positive for methamphetamine. A black purse found in the bedroom contained a rock of methamphetamine weighing 48.39 grams. The purse also held several small baggies containing methamphetamine in a white powder form. A funnel and a soup bowl found in the bedroom tested positive for residue of methamphetamine. Finally, methamphetamine was also identified in a solution in a glass jar in the freezer.

At trial, Lyon testified that "we found finished product. It was evidence that he had actually completed the process and actually manufactured the methamphetamine . . . ." On cross-examination, however, Lyon admitted he could not determine whether the methamphetamine he found had been purchased or had been processed by Peterson.

At trial, Schmidt stated that he and Peterson had been friends for 9 or 10 years. Schmidt testified that he last observed Peterson cooking methamphetamine on June 24, 1998, at Peterson's house. Schmidt described what he meant when he said Peterson cooked the methamphetamine by stating: "He had a glass jar about that (indicating) tall, that (indicating) big around. We put it on the stove, put some acetone on it, tried to dry it out, and came into a powder form, and then I purchased some and left." Schmidt said he paid Peterson $200 or $250.

Schmidt confirmed Peterson's statement to officers that he had asked Peterson to cook methamphetamine for him and stated that in the past he had used methamphetamine with Peterson. In addition, Schmidt testified that 3 or 4 months prior to June 24, 1998, he had seen Peterson cooking methamphetamine in the trailer.

Peterson was sentenced to a controlling term of 51 months imprisonment and 36 months post-release supervision for the primary offense of manufacture of methamphetamine.

On July 27, 2001, a three-member panel of the Court of Appeals issued its opinion affirming Peterson's conviction for manufacture of methamphetamine. It further concluded that considering the evidence adduced, an instruction on the lesser included crime of simple possession was merited and reversed Peterson's conviction for possession of methamphetamine with intent to sell and no drug tax stamp because no such instruction was given.

In addition, the Court of Appeals found that K.S.A. 1997 Supp. 65-4159 provided alternate means for its violation; in short, the court wrote that 65-4159 criminalized both the conduct of actually manufacturing methamphetamine and the conduct of attempting to manufacture methamphetamine. Therefore, the court concluded that the offenses charged were not duplicitous and a separate instruction on attempt was not needed.

## JURY INSTRUCTIONS

For his first assertion of error, Peterson argues that because the crimes of manufacturing and attempt to manufacture methamphetamine are separate and distinct offenses requiring proof of different elements, the trial court erred by refusing to submit his proposed Instructions Nos. "B," "C," and "J" to the jury. Peterson further contends that none of the elements of attempt were set forth in Instruction No. 9.

"When reviewing challenges to jury instructions, we are required to consider all the instructions together, read as a whole, and not to isolate any one instruction. If the instructions properly and fairly state the law as applied to the facts of the case, and a jury could not reasonably have been misled by them, the instructions do not constitute reversible error even if they are in some way erroneous. [Citation omitted.]" *State v. Mitchell*, 269 Kan. 349, 355, 7 P.3d 1135 (2000).

Our analysis of this issue involves the interpretation of K.S.A. 1997 Supp. 65-4159. Interpretation of a statute is a question of law, and our review is unlimited. An appellate court is not bound by the district court's interpretation of a statute. *Babe Houser Motor Co. v. Tetreault*, 270 Kan. 502, 506, 14 P.3d 1149 (2000).

In its review of this matter, our Court of Appeals stated:

"K.S.A. 1997 Supp. 65-4159 covers manufacturing or attempting to manufacture a controlled substance. Both manufacturing and attempting to manufacture have the same severity level and penalty. K.S.A. 1997 Supp. 65-4159. There is not a separate offense for attempting to manufacture. A separate instruction is not necessary in order to convict. The statute simply provides alternative means by which the statute can be violated."

The Court of Appeals concluded the trial court did not err in instructing the jury.

In *Martens*, 29 Kan. App. 2d 361, another panel of the Court of Appeals held that the crime of attempt to manufacture a controlled substance was a separate and distinct offense from the crime of manufacture of controlled substance. There, the panel stated:

"K.S.A. 1997 Supp. 65-4159 is titled, in part, as 'Unlawful manufacturing or attempting such of any controlled substance.' The title of the statute however, is not dispositive to the issue of whether the statute creates a single offense because '[t]he title or caption prefacing the text of a statute is prepared by the revisor of

statutes (K.S.A. 77-133[b]) and "forms no part of the statute itself." [Citation omitted.]' *State v. Larson*, 12 Kan. App. 2d 198, 201, 737 P.2d 880 (1987).

"Section (a) of K.S.A. 1997 Supp. 65-4159 states as follows: 'Except as authorized by the uniform controlled substances act, it shall be unlawful for any person to *manufacture* any controlled substance or controlled substance analog.' (Emphasis added.) We interpret this subsection as providing the elements of the offense. The only means of violating the statute is manufacturing a controlled substance or a controlled substance analog. Because the statute does not specify attempted manufacture of a controlled substance as a means of violating the statute, attempted manufacture of a controlled substance is a separate offense created under K.S.A. 21-3301(a). This interpretation is supported by PIK Crim. 3d 67.21-A (1999 Supp.), which lists manufacture of a controlled substance, not attempted manufacture, as the means of violating K.S.A. 1997 Supp. 65-4159." 29 Kan. App. 2d at 365.

K.S.A. 65-4159 was enacted in 1990 and amended in 1993 and 1994. Prior to the 1994 amendment, the statute included language which prohibited "the unlawful manufacturing or attempting to unlawfully manufacture any controlled substance." K.S.A. 65-4159; K.S.A. 1993 Supp. 65-4159. However, in 1994, the legislature performed an extensive revision of 65-4159, dividing it into four subsections and changing the language of the first subsection to read: "(a) Except as authorized by the uniform controlled substances act, it shall be unlawful for any person to manufacture any controlled substance or controlled substance analog." The 1994 amendment omitted the phrase "or attempting to unlawfully manufacture" from subsection (a) that set forth the statutory prohibition.

Subsections (b) and (c) of 65-4159 still refer to "attempting to manufacture." However, those subsections simply effectuate the same penalty for attempting to unlawfully manufacture as for the actual manufacture of a controlled substance and do not criminalize any specific conduct.

By its amendment of 65-4159(a), the legislature omitted the phrase "or attempting to unlawfully manufacture" previously seen in the statute. "When the legislature revises an existing law, it is presumed that the legislature intended to change the law as it existed prior to the amendment. [Citation omitted.]" *Kaul v. Kansas Dept. of Revenue*, 266 Kan. 464, 471, 970 P.2d 60 (1998), *cert. denied* 528 U.S. 812 (1999). Therefore, we conclude that following

its amendment in 1994, 65-4159 no longer includes the crime of attempting to manufacture a controlled substance.

K.S.A. 21-3107 states:

"(1) When the same conduct of a defendant may establish the commission of more than one crime under the laws of this state, the defendant may be prosecuted for each of such crimes. Each of such crimes may be alleged as a separate count in a single complaint, information or indictment.

"(2) Upon prosecution for a crime, the defendant may be convicted of either the crime charged or a lesser included crime, but not both. A lesser included crime is:

. . . .

"(c) an attempt to commit the crime charged."

Under the plain language of K.S.A. 1997 Supp. 21-3107(2)(c), attempt to manufacture methamphetamine may be considered a lesser included crime of the manufacture of methamphetamine. Here, the trial court failed to provide a separate instruction on attempt to manufacture methamphetamine.

We find that the instructions given by the trial court, when considered as a whole, failed to properly and fairly state the law and were likely to mislead the jury. Therefore, we reverse Peterson's conviction for manufacture of methamphetamine and remand this matter for a new trial.

By reason of our decision on this issue, the remaining issues are moot.

DAVIS, J., not participating.

BRAZIL, S.J., assigned.