(79 P.3d 211)
No. 89,498

STATE OF KANSAS, *Appellee*, v. TROY A. PERCIVAL, *Appellant*.

Opinion filed November 21, 2003.

*Carl F.A. Maughan*, of Law Offices of Carl Fredrick Alexander Maughan L.L.C., of Wichita, for appellants.

*Lesley A. Isherwood*, assistant district attorney, *Nola Foulston*, district attorney, and *Phill Kline*, attorney general, for appellee.

Before ELLIOTT, P.J., MALONE, J., and ROGG, S.J.

MALONE, J.: Troy A. Percival appeals his jury conviction of aggravated robbery. He raises numerous claims of error, including the improper admission of evidence of his prior convictions, improper jury instructions, and insufficiency of the evidence. We conclude that Troy received a fair trial and affirm his conviction.

On December 27, 2001, at approximately 12:20 a.m., Jennifer Scott heard someone punching in numbers to enter the security door at the Comfort Inn in Wichita, Kansas. Scott was working as the motel's night auditor and believed the person attempting to enter was a coworker. However, a masked man with a meat cleaver came into the office, pushed Scott back into the motel's counter, shoved the cleaver in her face, and verbally threatened her. The man was "covered from head to toe in dark clothing." After shoving Scott, the man went directly to the security camera and struck it with the meat cleaver. Scott pled for him not to hurt her. The man

went to the cash drawer, took money, and left with approximately $132.

Scott called 911 and the motel's general manager, Teresa Helm. Scott told Helm that she believed Steven Percival, one of Helm's sons, had committed the robbery. Helm is the mother of Steven and Troy Percival. Both Steven and Troy had previously worked at the Comfort Inn. Helm instructed Scott to tell the police everything Scott observed.

The police responded quickly to Scott's call. Scott gave a description of the perpetrator, his clothing, and other details of the event to an officer. Meanwhile, other officers were dispatched to look for the suspect in the area.

Two officers stopped Steven and Troy in a car for running a stop sign near the Comfort Inn at approximately 12:26 a.m., 6 minutes after the robbery. Both Steven and Troy are white males, approximately 6 feet in height, and weigh 150-170 pounds, all characteristics which matched Scott's description. Steven was driving. There was currency on the floorboard at Troy's feet. A ski mask and gloves were on the middle console. Troy was sweaty, swearing, and belligerent.

Officers transported Steven and Troy separately to a Coastal Mart near the Comfort Inn for a show-up. During the transport, Steven told Officer Dean that Troy threw clothing Troy had worn during the robbery out the car window before they had stopped. Steven also stated that Troy had thrown away a meat cleaver Troy used in the robbery. Dean radioed Officer McKee who went to the location described by Steven. McKee found a blue sweatshirt, a white stocking cap, a blue bandana, and a pair of black gloves at the site Steven designated. McKee did not find the meat cleaver.

Troy, in his ride to the Coastal Mart, apparently said, "I've been in the pen." He was wearing an ankle bracelet and stated he was on parole.

Scott identified Troy as the perpetrator at the show-up. She identified him by his pants and his voice. She did not, however, recognize the shirt Troy had on because it was light in color. Steven wore light colored pants. This identification occurred at approximately 1:44 a.m.

Helm came to the Coastal Mart after checking in at the Comfort Inn. She confronted Troy. She would later testify Troy had access to the security door; Steven did not.

Steven and Troy were charged with aggravated robbery in violation of K.S.A. 21-3427. Steven pled guilty to a reduced charge of robbery and was sentenced.

Around February 1, 2002, David Paiva, a maintenance man at the Comfort Inn, found a meat cleaver while picking up trash. He showed it to Scott. She informed him that the police had already found the meat cleaver used in the robbery, so Paiva sharpened the meat cleaver and left it in the motel's maintenance office. Shortly before Troy's preliminary hearing, Helm learned about the discovery of the meat cleaver and turned it over to the police.

At the May 29, 2002, trial, Troy testified that he and Steven had smoked cocaine on the night of the robbery. According to Troy, Steven bought the cocaine with someone else's money and needed to replace the money. Troy contended he dropped Steven off at the motel to earn money from a man by prostitution. According to Troy, Steven paged him shortly thereafter and Troy went back to the Comfort Inn. Troy testified that Steven opened the driver's door, yelled at Troy to let him drive, and threw money at him as Troy was moving into the passenger's seat. Troy denied any knowledge of the robbery until being stopped by the officers.

Steven testified that he and Troy smoked crack on the night of the robbery and wanted more but had no money. Troy then decided to rob the Comfort Inn because he still had a passkey. Steven described Troy getting a blue sweatshirt, blue bandanna, and a meat cleaver from his home before they left for the Comfort Inn. Steven kept the car running while Troy went inside the motel. Several minutes later, Troy came out running. Troy jumped into the backseat and, while Steven was driving, Troy threw some clothes out the window. Troy climbed over the seat and was in the passenger seat when Steven ran the stop sign and was stopped by the officers.

Scott testified and identified Troy as the person who committed the robbery. Helm also testified for the State. She confirmed that Troy had called the motel a week before the robbery and asked

the clerk if she would look the other way if he came and took money from the cash drawer.

The jury convicted Troy of aggravated robbery. He was sentenced to 233 months in prison. Troy timely appealed.

### Evidence of prior convictions

Troy first claims the trial court erred by allowing the State to question Troy about his past convictions. Troy argues this evidence violated the order in limine and K.S.A. 60-421.

Generally, an appellate court's standard of review regarding a trial court's admission of evidence, subject to exclusionary rules, is abuse of discretion. *State v. Jenkins*, 272 Kan. 1366, 1378, 39 P.3d 47 (2002). However, this issue also involves interpretation of K.S.A. 60-421. Interpretation of a statute is a question of law, and an appellate court's review is unlimited. An appellate court is not bound by the district court's interpretation of a statute. *State v. Maass*, 275 Kan. 328, 330, 64 P.3d 382 (2003). In *State v. Johnson*, 21 Kan. App. 2d 576, 578, 907 P.2d 144, *rev. denied* 258 Kan. 861 (1995), a similar issue was raised. This court stated: "Because this issue involves an interpretation of K.S.A. 60-421, our standard of review is unlimited."

Prior to trial, Troy filed a motion in limine to suppress evidence of his statements made in the patrol car during transport to the Coastal Mart. These statements were that Troy had "been in the pen" and that he was on parole. At the hearing, defense counsel stated Troy also wanted "to keep out any 60-455 evidence" and "prior criminal activity." The motion was granted.

At trial, Troy referred to Steven as "shady." The prosecutor asked, "Are you saying that you aren't anything like your brother?" Eventually, after much quibbling, the prosecutor asked:

"Q. What's your image?
"A. My image?
"Q. Yeah.
"A. I'm a twenty-four-year-old male . . . getting ready to get married. That's my image.
"Q. You've got some crimes for false statement [or] dishonesty; don't you?
"A. Crimes for some false statements?"

Counsel objected and a bench conference was held. Counsel stated the questioning was a violation of the order in limine. The district court responded:

"COURT: I disagree. If there's—he takes the stand and testifies under oath, his credibility can be challenged with crimes of dishonesty and false statement, 60-421.

"[DEFENSE]: I strongly disagree with you, Judge, because I don't believe that you can impeach him with prior bad acts unless, of course, he's saying I've never committed any bad prior acts.

. . . .

"COURT: . . . I agree prior bad acts, but if they are convictions of dishonesties or false statement, they are admissible, and it's proper impeachment."

The court then took a short recess. Immediately after the recess, the prosecutor again began questioning Troy about his convictions of dishonesty and false statement. There was no objection at that time. Troy ultimately disclosed he had a conviction of criminal deprivation of property. The State also asked about a theft, but Troy made no admission to this charge. The prosecutor failed to impeach by inquiring further or by producing any abstracts of conviction. There was no further questioning about Troy's criminal record throughout the trial.

The State initially argues that this issue was not preserved for appeal because Troy failed to make a contemporaneous objection at trial. Although Troy originally objected to the evidence of his prior convictions when the question was first asked by the prosecutor, Troy failed to renew the objection when the questioning continued immediately after the short recess.

K.S.A. 60-404 states that a judgment shall not be reversed by reason of the erroneous admission of evidence "unless there appears of record objection to the evidence timely interposed and so stated as to make clear the specific ground of objection." Here, Troy clearly objected to the evidence of his prior convictions when the question was initially asked by the prosecutor, and the trial court overruled the objection. The trial court took a short recess, and then the same line of questioning was continued by the prosecutor. Although Troy failed to renew his objection after the recess, we believe that he substantially complied with the requirement of

K.S.A. 60-404 and that the purpose of the statute has certainly been met in this case. Accordingly, we will review the merits of this issue.

K.S.A. 60-421 states:

"Evidence of the conviction of a witness for a crime not involving dishonesty or false statement shall be inadmissible for the purpose of impairing his or her credibility. If the witness be the accused in a criminal proceeding, no evidence of his or her conviction of a crime shall be admissible for the sole purpose of impairing his or her credibility unless the witness has first introduced evidence admissible solely for the purpose of supporting his or her credibility."

According to the statute, the credibility of a witness can generally be impeached with evidence of a conviction of a crime involving dishonesty or false statement. However, this rule does not apply to *the accused in a criminal proceeding.* Under K.S.A. 60-421, a criminal defendant can only be questioned about convictions involving dishonesty or false statement if the defendant "has first introduced evidence admissible solely for the purpose of supporting his or her credibility."

The Kansas Supreme Court has "established that a criminal defendant does not place his or her credibility in issue, as contemplated by K.S.A. 60-421, merely by taking the witness stand." See *State v. Harris,* 215 Kan. 649, 651, 527 P.2d 949 (1974). In *State v. Smith,* 28 Kan. App. 2d 56, 11 P.3d 520 (2000), the court specifically stated that the previous convictions of dishonesty or false statements are barred when the witness is the defendant in a criminal case *"unless the defendant 'opens the door' by introducing evidence of his credibility."* (Emphasis added.) 28 Kan. App. 2d at 62 (citing *State v. Logan,* 236 Kan. 79, 83, 689 P.2d 778 [1984]); see also *State v. Johnson,* 21 Kan. App. 2d 576, 578-79, 907 P.2d 144, *rev. denied* 258 Kan. 861 (1995) (The court decided the defendant emphasized his truthfulness without any solicitation from the State, so he opened the door to being cross-examined about his previous convictions involving dishonesty or false statements.).

Here, the State argues that Troy "opened the door" to the evidence of his prior convictions by stating that Troy was not like his brother and that he had an image of "a 24-year-old male . . . getting ready to get married." We disagree. Troy's statement did not support his credibility or emphasize his truth-

fulness. More importantly, the remarks were clearly solicited by the State. We conclude there was no basis for the prosecutor to question Troy about his prior convictions. This evidence was admitted in violation of K.S.A. 60-421 and the court's order in limine.

We must now decide if this error is grounds to reverse Troy's conviction of aggravated robbery. "When reviewing the erroneous admission or exclusion of evidence, the error is harmless if no substantial right of the defendant is involved. [Citation omitted.]" *State v. Albright*, 271 Kan. 546, 556, 24 P.3d 103 (2001). " 'Where the evidence of guilt is of such direct and overwhelming nature that it can be said that evidence erroneously admitted or excluded in violation of a constitutional or statutory right could not have affected the result of the trial, such admission or exclusion is harmless. [Citation omitted.]' " *State v. Jamison*, 269 Kan. 564, 570, 7 P.3d 1204 (2000). To determine whether a trial error is harmless error or prejudicial error, each case must be scrutinized and viewed in the light of the trial record as a whole, not on each isolated incident viewed by itself. *State v. Navarro*, 272 Kan. 573, 584, 35 P.3d 802 (2001).

We first consider the fact that the admission of improper evidence in this case was relatively isolated. Troy disclosed that he had a prior conviction of criminal deprivation of property. The prosecutor asked about a theft conviction, but Troy denied this charge. After this limited questioning, the prosecutor moved on to a different issue. The prosecutor did not compound the error by offering to introduce any abstracts of conviction. There was no further questioning about Troy's criminal record during the course of the 3-day trial. Also, the prosecutor never brought out that Troy was on parole at the time of the robbery.

The evidence that Troy at least assisted in the aggravated robbery was overwhelming. Troy was arrested with Steven in the car near the Comfort Inn a few minutes after the robbery. There was currency on the floor board at Troy's feet. A ski mask and gloves were on the middle console. Troy was sweaty, swearing, and belligerent. Scott identified Troy as the perpetrator at the show-up shortly after the robbery. She identified him by his pants and his voice. Although Troy's shirt was different than originally described

by Scott, the evidence indicated that Troy had earlier thrown his dark shirt out the car window.

Primarily, Troy was implicated by his own family members. Steven testified that Troy committed the robbery while Steven waited in the car. Although Troy tried to blame the robbery on Steven, the evidence in the case was much stronger against Troy. Helm testified that Troy had access to the security door and Steven did not. Helm also testified that her son, Troy, had discussed robbing the motel a week earlier.

We conclude that the erroneous admission of evidence was harmless. Considering the trial record as a whole, we do not believe that the error affected Troy's substantial rights. We conclude beyond a reasonable doubt that the error did not affect the result of the trial and, accordingly, the error is not grounds for reversal.

### Instruction on lesser included offense

Troy next claims the trial court erred by failing to give a jury instruction for simple robbery. Troy was charged with aggravated robbery pursuant to K.S.A. 21-3427, the taking of property by force or threat of bodily harm while "armed with a dangerous weapon, to-wit: a meat cleaver." Troy contends the meat cleaver was used as a tool to disable the security camera and not as a weapon. Thus, Troy claims that the jury should also have been allowed to consider whether he was guilty of simple robbery.

A criminal defendant has a right to an instruction on all lesser included offenses supported by the evidence as long as (1) the evidence, when viewed in the light most favorable to the defendant's theory, would justify a jury verdict in accord with that theory and (2) the evidence at trial does not exclude a theory of guilt on the lesser offense. *State v. Williams*, 268 Kan. 1, 15, 988 P.2d 722 (1999). An instruction on a lesser included offense is *not* proper if from the evidence the jury could not reasonably convict the accused of the lesser offense. *State v. Robinson*, 261 Kan. 865, 883, 934 P.2d 38 (1997).

Whether a robber is "armed with a dangerous weapon" for aggravated robbery is determined from the victim's point of view. An object can be a dangerous weapon if intended by the user to con-

vince the victim that it is a dangerous weapon and the victim reasonably believes it is a dangerous weapon. *State v. Colbert*, 244 Kan. 422, 425-26, 769 P.2d 1168 (1989).

Scott testified at trial that the perpetrator pushed her back into the counter with a meat cleaver in his hand. He told her to "shut the fuck up . . ." and "that he would kill [her]." Scott felt threatened and pleaded with the perpetrator not to hurt her. She testified she was "freaking out." Clearly, the perpetrator committed robbery with a dangerous weapon. The fact that he also used the meat cleaver to strike the security camera does not transform the weapon into a tool.

There was no evidence to support a verdict for simple robbery. Furthermore, Troy's theory of defense was that Steven committed the robbery. If the jury believed Troy, they would have acquitted him. Troy's argument for a lesser included instruction on simple robbery is without merit.

### *Accomplice and informant instructions*

Next, Troy claims the trial court erred by not giving an accomplice instruction. There was no request at trial for the instruction.

" 'When reviewing challenges to jury instructions, we are required to consider all the instructions together, read as a whole, and not to isolate any one instruction. If all the instructions properly and fairly state the law as applied to the facts of the case, and a jury could not reasonably have been misled by them, the instructions do not constitute reversible error even if they are in some way erroneous.' [Citations omitted.]" *State v. Peterson*, 273 Kan. 217, 221, 42 P.3d 137 (2002).

"Unless the instruction is clearly erroneous, no party may assign as error the giving or failure to give an instruction unless he or she objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he or she objects and the grounds of his or her objection. Opportunity shall be given to make objections out of the hearing of the jury. K.S.A. 2001 Supp. 22-3414(3). Instructions are clearly erroneous only if the reviewing court is firmly convinced there is a real possibility that the jury would have rendered a different verdict if the error had not occurred. [Citations omitted.]" *State v. Davis*, 275 Kan. 107, 115, 61 P.3d 701 (2003).

PIK Crim. 3d 52.18 states:

"An accomplice witness is one who testifies that he was involved in the commission of the crime with which the defendant is charged. You should consider with caution the testimony of an accomplice."

Although the trial court did not give the accomplice instruction, the trial court gave the general credibility of a witness instruction at PIK Crim. 3d 52.09, which states:

"It is for you to determine the weight and credit to be given the testimony of each witness. You have a right to use common knowledge and experience in regard to the matter about which a witness has testified."

During cross-examination, defense counsel attempted to impeach Steven as being the person who robbed and threatened Scott. Counsel stressed his past convictions, his drug use, and his earlier threats to others. Counsel also attempted to impeach Steven's credibility with allegations that Steven committed prostitution and that he used another's money to buy drugs on the night of the robbery. Counsel suggested Steven testified against Troy to obtain a deal from the State. After this cross-examination, the jury was certainly aware of Steven's potential lack of credibility. There is no reason to believe that the jury failed to use "common knowledge and experience" in assessing Steven's testimony.

Furthermore, Steven's testimony was corroborated by Scott, the officers, and Helm. All the evidence presented by the State pointed to the conclusion that Troy committed the robbery inside the motel. Even though Steven's testimony was corroborated, it would have been the better practice for the trial court to give the accomplice instruction. See PIK Crim. 3d 52.18, Notes on Use. However, considering the instructions as a whole and the fact that the accomplice instruction was not requested, we conclude that the trial court's failure to give the instruction was not clearly erroneous.

Troy also argues the jury should have received a cautionary instruction regarding the testimony of an informant. There was no request at trial for the instruction.

PIK Crim. 3d 52.18-A states:

"You should consider with caution the testimony of an informant who, in exchange for benefits from the State, acts as an agent for the State in obtaining evidence against a defendant, if that testimony is not supported by other evidence."

This instruction was not indicated because Steven was not an informant. He did not act as an agent for the State. The definition

of an informant does not include a person who gives information only after being interviewed by police officers or gives information during the course of an investigation. *State v. Abel*, 261 Kan. 331, 336, 932 P.2d 952 (1997). Also, Steven's testimony at trial was substantially corroborated.

### Admission of meat cleaver

Next, Troy claims the trial court erred by admitting into evidence the meat cleaver found at the Comfort Inn approximately 5 weeks after the robbery. At trial, counsel objected because the blade had been sharpened after it was found and may have looked more menacing than during the robbery. As we previously indicated, the admission of evidence lies within the sound discretion of the trial court. *Jenkins*, 272 Kan. at 1378.

The State correctly laid the foundation for where and how the meat cleaver was found. Additionally, the jury heard that the blade had been sharpened and why. The fact that the meat cleaver was not discovered until later and that its condition was changed goes to the weight of the evidence, not its admissibility. Physical evidence, unless it is clearly irrelevant, should be admitted for such weight and effect as the jury sees fit to give it. *State v. Whitesell*, 270 Kan. 259, 277, 13 P.3d 887 (2000). Therefore, the court did not abuse its discretion by admitting the meat cleaver into evidence.

On appeal, Troy argues there was no link to the meat cleaver admitted into evidence and the one used in the robbery, making the evidence irrelevant. This was not the objection at trial. A party may not object at trial to the admission of evidence on one ground and then on appeal argue a different objection. *State v. Bryant*, 272 Kan. 1204, 1208, 38 P.3d 661 (2002). Clearly, a meat cleaver found on the grounds of the motel after the robbery was not totally coincidental. The trial court did not act arbitrarily, fancifully, or unreasonably by admitting the meat cleaver into evidence.

### Aiding and abetting instruction

Next, Troy claims the trial court erred by giving an aiding and

abetting instruction. The trial court gave the jury the following instruction found at PIK Crim. 3d 54.05:

"A person who, either before or during its commission, intentionally aids or abets another to commit a crime with intent to promote or assist in its commission is criminally responsible for the crime committed regardless of the extent of the defendant's participation, if any, in the actual commission of the crime."

Troy objected to this instruction at trial. On appeal, he asserts the State did not produce any evidence which indicated Troy may have aided Steven in the robbery. Therefore, Troy argues it was error to include this instruction.

Steven admitted to participating in the robbery and testified Troy planned and actually went into the motel. Troy's description, however, was that he was not involved and Steven tricked him into waiting with the getaway car. The jury could have believed various scenarios given by the evidence. A juror could have concluded that Troy drove Steven to the motel to commit the robbery, waited in the car, and then assisted with the getaway.

"If, from the totality of the evidence, a jury reasonably could conclude that the defendant aided and abetted another in the commission of the crime, then it is appropriate to instruct the jury on aiding and abetting. [Citation omitted.]" *State v. Pennington*, 254 Kan. 757, 764, 869 P.2d 624 (1994).

The State charged both Steven and Troy with aggravated robbery. Both men were found in the car with the money. The aiding and abetting instruction was included based on law applicable to the facts of this case. The instruction was supported by substantial competent evidence presented in the case.

### Allen instruction

Next, Troy claims the trial court erred in giving what is known as an *Allen* instruction to the jury. An *Allen* instruction is based upon the holding in *Allen v. United States*, 164 U.S. 492, 41 L. Ed. 528, 17 S. Ct. 154 (1896). Troy did not object at trial to the court's inclusion of the instruction. As previously stated, we consider this issue based upon a clearly erroneous standard of review.

The instruction given by the trial court was taken verbatim from PIK Crim. 3d 68.12. Troy asserts the Kansas Supreme Court has voiced disapproval of the *Allen* instruction and has urged caution

in its application because of its potential coercive effect. Although there is some truth to this claim, Troy fails to put the Supreme Court's concerns in the proper context.

The potential coercive effect of an *Allen* instruction in any case depends largely on *when* the instruction is given to the jury. The instruction is disapproved if given after the jury has begun deliberations, but the instruction is approved if given prior to deliberations. This view was expressed in *State v. Struzik*, 269 Kan. 95, 109, 5 P.3d 502 (2000), wherein the court stated:

"This court's reasoning for continued disapproval of a deadlock instruction given after the jury has begun deliberations is that such an instruction could be coercive or exert undue pressure on the jury to reach a verdict. One of the primary concerns with an *Allen*-type instruction has always been its timing. When the instruction is given before jury deliberations, some of the questions as to its coercive effect are removed."

See also *State v. Poole*, 252 Kan. 108, 114, 843 P.2d 689 (1992) ("If the instruction is given prior to deliberation, 'all question with regard to the coercive effect of the same would be removed.'"); *State v. Hall*, 220 Kan. 712, 719, 556 P.2d 413 (1976) ("The danger in giving an intimidating or coercive instruction arises when a jury has reported its failure to agree on a verdict. Under such circumstances a coercive instruction might induce a jury to return a verdict which they would not otherwise have reached.")

Here, the trial court gave the instruction prior to the jury retiring for deliberations. Therefore, it cannot be said the instruction had such a coercive effect as to require reversal of Troy's conviction. The giving of the *Allen* instruction was not clearly erroneous.

### Sufficiency of the evidence

Next, Troy claims there was insufficient evidence to convict him of aggravated robbery. This argument fails.

"When the sufficiency of the evidence is challenged in a criminal case, the standard of review is whether, after review of all the evidence, viewed in the light most favorable to the prosecution, the appellate court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt." *State v. Beach*, 275 Kan. 603, Syl. ¶ 2, 67 P.3d 121 (2003).

We have already recited the sufficiency of the evidence in applying the harmless error standard to the evidence of Troy's prior convictions. Troy would have this court believe his version of the robbery and the events surrounding it, but this court does not reweigh evidence or pass on the credibility of witnesses. *State v. Saiz,* 269 Kan. 657, 664, 7 P.3d 1214 (2000). The evidence in this case was sufficient to convict Troy of aggravated robbery.

Troy raises other issues including the failure to give a unanimity instruction and cumulative error. We have reviewed the record and, without further elaboration, find these arguments to be without merit. "This, like many criminal trials, was a difficult one, but as we have often said, an accused is entitled to a fair trial, not a perfect one. *State v. Chandler,* 252 Kan. 797, Syl. ¶ 3, 850 P.2d 803 (1993)." *State v. Broyles,* 272 Kan. 823, 842, 36 P.3d 259 (2001).

Affirmed.