NOT DESIGNATED FOR PUBLICATION

Nos. 114,546
114,547
114,548

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

CHARLES M. TORRENCE,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; DAVID J. KAUFMAN, judge. Opinion filed April 28, 2017.
Affirmed.

*Charles M. Torrence*, pro se appellant.

*Julie A. Koon*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*,
attorney general, for appellee.

Before SCHROEDER, P.J., GREEN, J., and BURGESS, S.J.

*Per Curiam*:  Charles M. Torrence appeals his jury trial convictions of six separate counts of robbery, attempted aggravated robbery, aggravated robbery, and criminal possession of a firearm. Reviewing Torrence's seven alleged errors, we find his claims lack merit or he fails to brief the issues. We find no error by the district court and affirm.

FACTS

Torrence was identified as a potential suspect in a series of armed robberies in Wichita between January and April 2013. On April 15, 2013, officers responded to a call of a vehicle containing a possible armed robbery suspect. Officers observed three individuals in the vehicle. LaDonna Barfell was seated in the driver's seat, Torrence was seated in the front passenger seat, and John Byrd was seated in the back seat. As they approached, the officers noticed Torrence moving around reaching for the glovebox and floorboard areas. The officers arrested Torrence and subsequently located a handgun in the glovebox.

Torrence was charged in three separate cases. In 13-CR-942, the State charged him with one count of attempted aggravated robbery at a Neighborhood Walmart store on January 20, 2013, in which he approached a cashier, demanded money, told her he had a gun, and threatened to shoot everyone in the store if she did not comply. In 13-CR-1383, the State charged him with aggravated robbery and criminal possession of a firearm based on armed robbery of a Cricket Wireless store on February 27, 2013, in which he took an iPhone from inside the store and threatened the store manager, S.C., with a firearm as she attempted to take back the phone. In 13-CR-1713, the State charged him with three counts:  aggravated robbery based on armed robbery of a Dollar General store on January 27, 2013, in which he approached the cashier, A.L., demanded money from the register, and showed A.L. a knife; robbery of a Walmart store on January 29, 2013, in which he demanded money from a cashier; and aggravated robbery of a Dillon's store on April 7, 2013, in which he approached a cashier, demanded money, and pointed a gun at her.

All three cases involving six counts were consolidated for a jury trial by agreement of the parties. The jury convicted Torrence of all charges. Following his conviction, Torrence filed a motion for a new trial and motion for arrest of judgment,

alleging ineffective assistance of counsel. The district court conducted an evidentiary hearing where it heard testimony from Torrence's trial counsel and trial counsel's investigator and took the matter under advisement. At a subsequent hearing, the district court gave an extensive oral ruling denying Torrence's motions.

Torrence was sentenced to 136 months' imprisonment in 13-CR-942; 247 months' imprisonment in 13-CR-1383; and 342 months' imprisonment in 13-CR-1713. The district court ordered his sentences to run consecutively for a total controlling sentence of 725 months' imprisonment. Torrence timely appeals. Additional facts are set forth as necessary herein.

ANALYSIS

*The district court had subject matter jurisdiction.*

Torrence argues the district court lacked subject matter jurisdiction to convict and sentence him on the charges in 13-CR-1383 and 13-CR-1713 after his cases were consolidated for trial. He acknowledges he did not raise this issue before the district court. However, subject matter jurisdiction may be raised at any time, whether for the first time on appeal or on the appellate court's own motion. *State v. Sales*, 290 Kan. 130, 135, 224 P.3d 546 (2010). Whether jurisdiction exists is a question of law subject to unlimited review. *State v. Dull*, 302 Kan. 32, 61, 351 P.3d 641 (2015).

Torrence asserts: "Once the State amended the Information in 13 CR 0942, however, to include Counts 2 [through] 6 from 13 CR 1383 and 13 CR 1713, [Torrence] may not be charged on the original informations." His claim that the State amended its information in 13-CR-942 is unsupported by the record, which does not contain an amended information. Torrence failed to include the State's informations in 13-CR-1383

3

or 13-CR-1713 in the record on appeal. Further, he fails to cite to the record in support of his claim.

Given this insufficient record, Torrence has failed to meet his burden under Kansas Supreme Court Rule 6.02(a)(4) and (5) (2017 Kan. S. Ct. R. 34) (appellant has the burden to furnish a sufficient record to support his or her claims of error; appellant's claims of error must be supported with specific citations to record on appeal). Therefore, this court must presume the trial court's action was proper. *State v. Sisson*, 302 Kan. 123, 128, 351 P.3d 1235 (2015) (party claiming error has burden of designating a record affirmatively showing prejudicial error; without such a record, appellate court presumes action of trial court was proper).

Even if Torrence had provided the necessary documents, his argument would still fail on the merits. Although not clearly articulated in his brief, Torrence appears to be arguing either: (1) consolidating the charges from all three cases into a single jury trial was equivalent to the State amending its complaint in 13-CR-942; or (2) the State was required to amend its complaint in 13-CR-942 after the cases were consolidated. These contentions are at best incidentally raised but not argued. A point incidentally raised in a brief but not argued therein is deemed waived and abandoned. *State v. Sprague*, 303 Kan. 418, 425, 362 P.3d 828 (2015). Torrence also fails to cite any pertinent authority in support of his argument. Failure to support a point with pertinent authority or explain why it is sound despite a lack of supporting authority or in the face of contrary authority is akin to failing to brief the issue. *State v. Murray*, 302 Kan. 478, 486, 353 P.3d 1158 (2015). He has failed to properly brief the issue; thus, this court must presume the district court's action was proper. See *Sisson*, 302 Kan. at 128.

Furthermore, Torrence's argument lacks merit as "[t]he court may order two or more complaints, informations or indictments against a single defendant to be tried together if the crimes could have been joined in a single complaint, information or

4

indictment." K.S.A. 22-3203. Torrence does not argue the crimes could not have been charged in a single complaint, indictment, or information. The charges were related to an ongoing series of property crimes; therefore, they could be charged in the same complaint, indictment, or information. See K.S.A. 22-3202(1). Consolidating multiple cases for trial does not cause the charges in each complaint to lose their individual identity; rather, "there is a single trial and the jury is to determine each charge on the evidence submitted on each count of the separate complaints." *State v. Taylor*, 262 Kan. 471, 479, 939 P.2d 904 (1997), *abrogated on other grounds by State v. Berreth*, 294 Kan. 98, 123, 273 P.3d 752 (2012). We find the district court had subject matter jurisdiction to preside over all of the charges pending against Torrence in the three cases consolidated by agreement for one jury trial.

*The State's information in 13-CR-942 was not defective.*

Torrence argues the wording of the State's information in 13-CR-942—alleging attempted aggravated robbery—"was jurisdictionally and fatally defective as required elements of the crime are wholly absent." Specifically, he argues the State's information did "not allege whether any alleged demands for money occurred within or outside of another's presence nor if force, threat of bodily harm, or bodily harm occurred." He further asserts: "The charging document hereon [*sic*] shows that [Torrence] possessed no 'malignancy of mind' by its failure to allege that Torrence's actions were committed 'knowingly, unlawfully, and willfully.'"

In response, the State asserts Torrence's argument is not properly before this court because it was not raised below. Torrence frames the issue as a question of subject matter jurisdiction—an issue that can be raised for the first time on appeal. See *Sales*, 290 Kan. at 135. However, as the Kansas Supreme Court held in *State v. Dunn*, 304 Kan. 773, 811, 375 P.3d 332 (2016):

5

"Charging documents do not bestow or confer subject matter jurisdiction on state courts to adjudicate criminal cases; the Kansas Constitution does. Charging documents need only show that a case has been filed in the correct court, *e.g.*, the district court rather than municipal court; show that the court has territorial jurisdiction over the crime alleged; and allege facts that, if proved beyond a reasonable doubt, would constitute a Kansas crime committed by the defendant."

As a general rule, a decision overruling precedent is applied to all similar cases pending as of the date of the overruling decision. *State v. Nguyen*, 281 Kan. 702, 715, 133 P.3d 1259 (2006). Since the Kansas Constitution confers jurisdiction to adjudicate criminal cases, not the charging document, the district court had jurisdiction to convict and sentence Torrence.

*Dunn* held challenges to charging documents should be raised before the district court to preserve the issue and, if not raised below, the defendant must demonstrate an exception to the preservation rule applies. 304 Kan. at 818-19. The Kansas Supreme Court identified three exceptions to the preservation rule:

"(1) The newly asserted theory involves only a question of law arising on proved or admitted facts and is determinative of the case; (2) consideration of the theory is necessary to serve the ends of justice or to prevent denial of fundamental rights; and (3) the district court is right for the wrong reason." *State v. Phillips*, 299 Kan. 479, 493, 325 P.3d 1095 (2014).

We recognize *Dunn* was decided 1 week before Torrence filed his brief, and it is understandable Torrence did not address the preservation issue as set out in *Dunn*. However, he did file two letters of supplemental authority pursuant to Kansas Supreme Court Rule 6.09 (2017 Kan. S. Ct. R. 39). In his Rule 6.09 letters, he acknowledges *Dunn* but still does not address preservation. An argument not raised before the district court cannot be raised for the first time on appeal. *State v. Kelly*, 298 Kan. 965, 971, 318 P.3d 987 (2014). Kansas Supreme Court Rule 6.02(a)(5) requires a party to explain why an

6

issue not raised below should be considered for the first time on appeal. This rule is to be strictly enforced. *State v. Godfrey*, 301 Kan. 1041, 1044, 350 P.3d 1068 (2015). Parties who fail to comply with this rule risk a ruling that the issue is improperly briefed and will be deemed waived and abandoned. *State v. Williams*, 298 Kan. 1075, 1085, 319 P.3d 528 (2014).

Prior to trial, Torrence argued the information was defective for failing to name a victim; he did not allege any additional defects. Torrence has not briefed this argument on appeal; therefore, it is deemed waived and abandoned. *State v. Williams*, 303 Kan. 750, 758, 368 P.3d 1065 (2016) (an issue not briefed by the appellant is deemed waived and abandoned). We also observe Torrence's brief on appeal presents this new issue wholly distinct from the issue he originally raised before the district court. Torrence has failed to explain why the argument was not raised below or why it should now be considered for the first time on appeal; therefore, he has failed to properly preserve the issue or explain why we should address his claims.

In any event, Torrence's argument fails on the merits since *Dunn* is wholly adverse to his position:

> "Charging documents need only show that a case has been filed in the correct court, *e.g.*, the district court rather than municipal court; show that the court has territorial jurisdiction over the crime alleged; and allege facts that, if proved beyond a reasonable doubt, would constitute a Kansas crime committed by the defendant." 304 Kan. at 811.

Here, the State's information alleged: (1) the crime committed—attempted aggravated robbery; (2) the manner in which it was committed; (3) Torrence committed the crime; and (4) the crime was committed in Sedgwick County. Therefore, the State's complaint satisfied the requirements articulated in *Dunn*.

7

In his September 12, 2016, Rule 6.09 letter, Torrence "contends that his defective complaint issue is actually a 'structural' error which def[ies] harmless-error analysis." This argument is contrary to *Dunn*, wherein our Supreme Court explicitly held a defective complaint is *not* structural error and *is* subject to harmless error analysis. 304 Kan. at 821. Because there is no indication the Kansas Supreme Court is departing from this position, this court is duty bound to follow established precedent. *State v. Meyer*, 51 Kan. App. 2d 1066, 1072, 360 P.3d 467 (2015). Additionally, we note Torrence has failed to address the harmless error analysis; thus, his argument fails.

*No jury instruction error*

Torrence argues the jury was improperly instructed by the district court, asserting the district court's use of PIK Crim. 4th 54.410 was erroneous. He argues the instruction improperly defines the term "dangerous weapon" for purposes of aggravated robbery. Specifically, he contends the instruction creates a subjective test for determining whether an object is a dangerous weapon that "adds a specific intent element to K.S.A. 21-5420(b) not readily found therein." He further argues "the subjective test allows the victim to speculate about what he or she saw and, wors[e], to guess about what the suspect intended."

The standard of review when addressing challenges to jury instructions is well settled in Kansas:

> "'(1) First, the appellate court should consider the reviewability of the issue from both jurisdictional and preservation viewpoints, exercising an unlimited standard of review; (2) next, the court should use an unlimited review to determine whether the instruction was legally appropriate; (3) then, the court should determine whether there was sufficient evidence, viewed in the light most favorable to the defendant or the requesting party, that would have supported the instruction; and (4) finally, if the district court erred, the appellate court must determine whether the error was harmless, utilizing the test and

8

degree of certainty set forth in *State v. Ward*, 292 Kan. 541, 256 P.3d 801 (2011), *cert. denied* 132 S. Ct. 1594 (2012).'" *State v. Woods*, 301 Kan. 852, 876, 348 P.3d 583 (2015).

Our Supreme Court "strongly recommend[s] the use of PIK instructions, which knowledgeable committees develop to bring accuracy, clarity, and uniformity to instructions." *State v. Barber*, 302 Kan. 367, 377-78, 353 P.3d 1108 (2015). Unless the particular facts of a case require modification of the PIK instructions, they should be followed. *State v. Dixon*, 289 Kan. 46, 67, 209 P.3d 675 (2009).

At trial, Torrence objected to the instruction, raising the same argument he asserts on appeal. The district court overruled his objection and gave the instruction to the jury. The issue is properly preserved; therefore, we move to consider whether the instruction was legally appropriate. See *Woods*, 301 Kan. at 876.

In pertinent part, PIK Crim. 4th 54.410 defines a dangerous weapon as:

"[A]n instrument which, from the manner in which it is used, is calculated or likely to produce death or serious bodily injury. An object can be a dangerous weapon if the user intended to convince a person that it is a dangerous weapon and that person reasonably believed it to be a dangerous weapon."

This definition is consistent with Kansas precedent; thus, it is legally appropriate. See *State v. Colbert*, 244 Kan. 422, 425, 769 P.2d 1168 (1989) (defining dangerous weapon as "[a]n instrument which, from the manner in which it is used, is calculated or likely to produce death or serious bodily injury"); *State v. Davis*, 227 Kan. 174, 176-77, 605 P.2d 572 (1980) (outlining a subjective test for determining whether a robbery was committed with a deadly weapon); *State v. Percival*, 32 Kan. App. 2d 82, 92-93, 79 P.3d 211 (2003) ("Whether a robber is 'armed with a dangerous weapon' for aggravated robbery is determined from the victim's point of view. An object can be a dangerous

9

weapon if intended by the user to convince the victim that it is a dangerous weapon and the victim reasonably believes it is a dangerous weapon.").

Torrence does not explain how the instruction adds a specific intent element, nor does he adequately explain how the authorities he cites support his argument. He does not argue the particular facts of his case warranted modification of the instruction, nor does the record reflect any. Contrary to his argument, PIK Crim. 4th 54.410 does not allow the victim to speculate as to what he or she saw or guess about the defendant's intent. Rather, it requires the victim to *reasonably* believe it is a dangerous weapon. *Percival*, 32 Kan. App. 2d at 91-92. Because S.C. testified Torrence had a gun, the instruction was legally appropriate. We find it unnecessary to continue the analysis. See *Woods*, 301 Kan. at 876. The district court properly instructed the jury using the PIK definition for a dangerous weapon and did not err. See *Barber*, 302 Kan. at 377-78; *Dixon*, 289 Kan. 46, Syl. ¶ 10.

*Sufficient evidence supports Torrence's convictions for aggravated robbery and criminal possession of a firearm in case No. 13-CR-1383*.

Torrence argues there was insufficient evidence to support his convictions for aggravated robbery and criminal possession of a firearm in 13-CR-1383. When the sufficiency of evidence is challenged in a criminal case, the appellate court reviews all the evidence in the light most favorable to the State. A conviction will be upheld if the court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt based on that evidence. *State v. Laborde*, 303 Kan. 1, 6, 360 P.3d 1080 (2015). It is only in rare cases where the testimony is so incredible that no reasonable factfinder could find guilt beyond a reasonable doubt that a guilty verdict will be reversed. *State v. Matlock*, 233 Kan. 1, 5-6, 660 P.2d 945 (1983).

At trial, the manager of the Cricket Wireless store, S.C., testified Torrence entered the store on the evening of February 27, 2013. S.C. asked Torrence whether he needed

any help, and Torrence replied he was just looking. Torrence went over to the iPhone display at the front of the store, and S.C. heard the alarm go off. S.C. initially thought Torrence accidentally pulled too hard on the security cable. As she went over to check, Torrence ran out of the store. S.C. saw the iPhone was missing and chased after Torrence. She saw the iPhone in Torrence's hand and reached to grab it. Torrence told S.C. not to "mess with" him and showed S.C. a gun in his right hand. S.C. backed away, and Torrence left with the iPhone.

Torrence asserts the evidence was insufficient because "[t]he State presented no evidence that [Torrence] took the phone by force or threat of bodily harm." Essentially, he argues the taking was complete before any threat of force or bodily harm was made. Whether the taking was complete prior to Torrence threatening S.C. is a question of fact. Factual determinations are a question for the jury, not this court.

To convict him of aggravated robbery, the State was required to prove Torrence: (1) knowingly took property from the person or presence of another by force or by threat of bodily harm to any person; and (2) did so while armed with a dangerous weapon. See K.S.A. 2016 Supp. 21-5420(b)(1). When viewed in the light most favorable to the State, the evidence was more than sufficient to support his conviction.

Torrence further argues the State's evidence was insufficient to prove criminal possession of a firearm, asserting "the State did not prove every fact necessary to constitute the crime beyond a reasonable doubt." However, he does not explain which fact or facts the State failed to prove at trial. At best, he incidentally raises the point and again fails to argue it, so we deem it waived and abandoned. See *Sprague*, 303 Kan. at 425. Instead, Torrence focuses on the district court's jury instruction; however, he fails to properly frame or brief the issue as a matter of jury instruction error. Again, the point is incidentally raised but not argued.

11

To convict Torrence of criminal possession of a firearm, the State was required to prove: (1) Torrence possessed a firearm; and (2) had been convicted of a felony within the preceding 10 years. See K.S.A. 2016 Supp. 21-6304(a)(3)(A). S.C. testified Torrence had a firearm in his possession, and Torrence stipulated he was previously convicted of aggravated robbery—a person felony. The jury was advised of his stipulation. Torrence fails to acknowledge in his brief the stipulation before the district court which was presented to the jury, much less argue it was insufficient to support his conviction. When viewed in the light most favorable to the State, the evidence of criminal possession of a firearm was more than sufficient to support Torrence's conviction.

Torrence fails to brief or challenge the sufficiency of the evidence for his other four convictions; therefore, he has waived and abandoned the issues. *Williams*, 303 Kan. at 758.

*No* Brady *violation*

Torrence argues the State failed to provide him with "favorable impeachment evidence that detective David Alexander had falsified DNA evidence in another robbery case . . . to secure a search warrant," thereby violating *Brady v. Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963). At trial, Detective Alexander testified on behalf of the State about photographic and video surveillance evidence obtained from the scenes of the robberies. He also testified regarding his interview of LaDonna Barfell.

Prior to sentencing, Torrence filed a motion for new trial alleging a *Brady* violation. He asserted "Detective Alexander was known to falsify evidence to secure a suspect's arrest and conviction." Specifically, he alleged Detective Alexander made a false statement regarding DNA evidence when applying for a search warrant in an unrelated case.

12

In response to Torrence's motion, the State explained:

"Detective Alexander stated in the affidavit that he wanted to compare the DNA of the defendant to possible DNA on swabs originating from a Gatorade bottle located at the scene. Alexander believed when he wrote the search warrant application that the Gatorade bottle in the possession of the police department had already been swabbed by crime scene investigators. Instead[,] the scientist who analyzed the DNA swabbed the bottle when it arrived at the lab."

The State argued Detective Alexander's mistake as to the timing of the DNA swab in an unrelated case was not material to Torrence's case because Torrence's theory of defense was mistaken identity. The State also argued Detective Alexander did not identify Torrence; rather, identification was established through the victims' testimony and photographic and video evidence.

The district court took judicial notice of the facts in 14-CR-417 and denied Torrence's motion without a hearing. Specifically, the district court found:

"6.      Evidence which [Torrence] seeks to admit at a new trial, *i.e.* Detective Alexander's false (*i.e.* incorrect) statement in an application for search warrant is inadmissible evidence pursuant to K.S.A. 60-420, 421, and 422, regardless of the intent of affiant in making the false/incorrect statement. Moreover or in the alternative, the evidence, if admissible, merely tends to impeach or discredit the testimony of Detective Alexander. No other credible corroborating evidence relevant to Detective Alexander's credibility exists.

"NOTE: The Court explicitly rejects [Torrence]'s continuing assertion that a prior contact/relationship between Detective Alexander and LaDonna Barfell existed.

"7.      Thus, even if [Torrence] had the affiant/application information before a retrial, because of its inadmissibility as a matter of law, [Torrence]'s pretrial knowledge of the same would not likely produce a different result upon retrial, especially in light of the overwhelming evidence of guilt produced at trial which is independent of any trial testimony given by Detective Alexander. In the alternative, assuming the evidence [were]

13

admissible, it merely tends to impeach Detective Alexander and no corroborating impeachment evidence exists; as such, the impeaching evidence is not of such materiality that it is likely to produce a different result upon retrial.

> "NOTE: The Court assumes for purposes of this ruling that the affiant/application information could not, with reasonable diligence, have been produced at [Torrence]'s trial."

A district court's decision on a motion for new trial is reviewed for abuse of discretion. *State v. Williams*, 303 Kan. 585, 595, 363 P.3d 1101 (2016). An abuse of discretion occurs when a judicial action is (1) arbitrary, fanciful, or unreasonable, *i.e.*, no reasonable person would take the view adopted by the trial court; (2) based on an error of law; or (3) based on an error of fact. *State v. Marshall*, 303 Kan. 438, 445, 362 P.3d 587 (2015).

Torrence fails to demonstrate an abuse of discretion by the district court. Instead, he generally asserts the State willfully withheld evidence in order to secure a conviction. He argues the evidence was exculpatory but fails to explain how. He has not shown the evidence was truly exculpatory as opposed to merely tending to impeach Detective Alexander's credibility. He asserts "the State's evidence against [Torrence] was scanty at best" but fails to specifically identify any deficiencies. He also fails to recognize the testimony of each of the witnesses or the photographic and video evidence. At best, he incidentally raises these points but fails to argue them. A point raised incidentally in a brief but not argued therein is deemed waived and abandoned. *Sprague*, 303 Kan. at 425. Further, he fails to support many of these contentions with pertinent authority. Failure to support a point with pertinent authority or explain why it is sound despite a lack of supporting authority or in the face of contrary authority is akin to failing to brief the issue. *Murray*, 302 Kan. at 486.

In any event, Torrence's argument fails. Under K.S.A. 60-422, "[a]s affecting the credibility of a witness . . . evidence of specific instances of his or her conduct relevant

14

only as tending to prove a trait of his or her character, shall be inadmissible." The circumstances surrounding Detective Alexander's statements were not pertinent to Torrence's case. There was nothing materially exculpatory in Detective Alexander's statement. Moreover, there is no indication Detective Alexander knowingly or purposefully made a false statement. The evidence merely shows Detective Alexander was mistaken as to the timing of the collection of evidence in an unrelated case. At best, this evidence only tends to impeach Detective Alexander's credibility. The district court properly found it was inadmissible pursuant to K.S.A. 60-422.

*Torrence's trial counsel was not ineffective*.

Torrence argues his trial counsel was ineffective for failing to properly investigate evidence and cross-examine the State's witnesses. He asserts his trial counsel failed to investigate witnesses whose testimony would have supported his theory of mistaken identification.

A claim alleging ineffective assistance of counsel presents mixed questions of fact and law. When the district court conducts a full evidentiary hearing on such claims, the appellate courts determine whether the district court's findings are supported by substantial competent evidence and whether the factual findings support the court's legal conclusions. The appellate courts apply a de novo standard to the district court's conclusions of law. *Fuller v. State*, 303 Kan. 478, 485, 363 P.3d 373 (2015).

To prevail on a claim of ineffective assistance of counsel, a criminal defendant must establish: (1) the performance of defense counsel was deficient under the totality of the circumstances; and (2) prejudice, *i.e.*, there is a reasonable probability the jury would have reached a different result absent the deficient performance. *Sola-Morales v. State*, 300 Kan. 875, 882, 335 P.3d 1162 (2014).

15

Judicial scrutiny of counsel's performance in a claim of ineffective assistance of counsel is highly deferential and requires consideration of all the evidence before the judge or jury. The reviewing court must strongly presume that counsel's conduct fell within the broad range of reasonable professional assistance. *State v. Kelly*, 298 Kan. 965, 970, 318 P.3d 987 (2014). To establish prejudice, the defendant must show a reasonable probability that, but for counsel's deficient performance, the outcome of the proceeding would have been different, with a reasonable probability meaning a probability sufficient to undermine confidence in the outcome. *Sprague*, 303 Kan. at 426.

In his motion for new trial and motion for arrest of judgment, Torrence asserted trial counsel was ineffective for numerous reasons. On appeal, Torrence limits his argument, claiming trial counsel failed to investigate V.G., C.C., M.C., and A.S. as potential witnesses. He claims his cousin, V.G., the owner of the white Dodge Durango identified as the getaway vehicle in the Walmart robbery, would have testified: (1) her vehicle was inoperable at the time of the crime and therefore could not have been the get-away vehicle; (2) Torrence had facial injuries at the time of the incidents; and (3) V.G. and Barfell had been in a fight, providing motive for Barfell to retaliate against V.G. and Torrence. He further claims A.S., a physician's assistant who treated him for an unrelated medical condition prior to his arrest, would have testified he had facial injuries during the timeframe in which the incidents occurred.

Torrence asserts testimony regarding his facial injuries would have supported his theory of mistaken identification because the State's witnesses indicated he did not have any facial injuries. He claims M.C., a witness to the Dollar General robbery, would have testified he told the investigating officers A.L.'s attacker was "possibly Hispanic," further supporting his theory of mistaken identification. He does not allege C.C., a witness who identified the getaway vehicle in the Walmart robbery, would have provided favorable testimony; rather, he argues trial counsel's investigation of C.C. was inadequate.

16

At the posttrial evidentiary hearing, Torrence's trial counsel testified he hired an investigator to help review the evidence and interview potential witnesses. Trial counsel indicated he reviewed the evidence and discussed the matter with his investigator and concluded it would not be beneficial to have V.G., C.C., M.C., or A.S. testify at trial. Moreover, trial counsel was concerned some of the witnesses' testimony would hurt Torrence's case or limit his ability to cross-examine other witnesses. Trial counsel's investigator testified in detail regarding her investigation and that testimony supports trial counsel's decision not to call the witnesses Torrence now complains of.

The district court took the matter under advisement. Subsequently, the district court held a hearing where it provided an extensive oral ruling denying Torrence's motions.

The district court made specific findings with regard to each of the potential witnesses. It noted counsel's investigator contacted A.S. regarding Torrence's alleged facial injury, but the medical records showed Torrence did not have an injury on his face. A.S. specifically recalled an injury on Torrence's extremities. Additionally, the district court found Torrence's mugshot from March 25, 2013, showed no indication of a facial injury. The district court further noted trial counsel was aware Barfell stated Torrence did not have facial injuries during the timeframe in which the crimes were committed.

With regard to V.G., the district court noted counsel's investigator learned Barfell told Detective Alexander she drove Torrence to Walmart to commit a robbery in V.G.'s Dodge Durango. Detective Alexander spoke with V.G., and she admitted she owned a 1999 Durango and loaned it to Barfell on the day in question. The investigator attempted to contact V.G. but was unsuccessful. In light of the evidence at trial, the district court found V.G.'s Durango was the vehicle used in the Walmart robbery.

Regarding C.C., the district court found counsel and his investigator reviewed the discovery and learned C.C. witnessed the Walmart robbery and told police the getaway vehicle was an SUV with a gray, primer-colored hood. C.C. provided no other information. The district court found C.C.'s statement immaterial.

Finally, with respect to M.C., the district court noted he described A.L.'s attacker in the Dollar General robbery as either black or Hispanic but could not clearly identify him. The district court found M.C.'s testimony was neither exculpatory nor helpful.

As previously stated, we do not reweigh evidence or credibility; rather, we review the district court's findings to determine whether they are supported by substantial competent evidence. *Fuller*, 303 Kan. at 485. Here, the district court's findings are supported by substantial competent evidence. Trial counsel's decisions regarding the scope of his investigation and cross-examination were appropriate strategic decisions given the information he discovered with his investigation. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland v. Washington*, 466 U.S. 668, 690, 104 S. Ct. 2052, 80 L. Ed. 2d 674, *reh. denied* 467 U.S. 1267 (1984). Based on the district court's findings and the evidence presented at the posttrial hearing, Torrence has failed to show counsel's performance was objectively deficient; therefore, he was not prejudiced and we need not address that prong. Accordingly, we find his claim of ineffective assistance of counsel fails. See *Sola-Morales*, 300 Kan. at 882.

*No prosecutorial error*

Torrence's final argument claims the State committed prosecutorial error by "knowingly us[ing] perjured testimony against [Torrence] to obtain his conviction." The State asserts Torrence has framed this as an issue of prosecutorial error "[p]resumably . . . to evade procedural hurdles" because he did not object at trial. While it is impossible to

18

know Torrence's intent, he cannot frame an unpreserved evidentiary objection as an issue of prosecutorial error merely to advance its procedural posture. See *State v. Raskie*, 293 Kan. 906, 914, 269 P.3d 1268 (2012) (a contemporaneous objection must be made to all evidentiary claims—including questions posed by a prosecutor and responses to those questions—to preserve the issue for appellate review).

To preserve an evidentiary objection, "a party must lodge a timely and specific objection to the admission or exclusion of evidence." *State v. King*, 288 Kan. 333, 348, 204 P.3d 585 (2009) (discussing the contemporaneous objection rule under K.S.A. 60-404). Torrence did not make a timely objection at trial. He has not explained why the issue was not raised below or why it should now be considered for the first time on appeal. Accordingly, his claim of prosecutorial error is not properly before this court. See K.S.A. 60-404; *Godfrey*, 301 Kan. at 1044; *Williams*, 298 Kan. at 1085.

Affirmed.