(10 P.3d 16)

No. 82,668

STATE OF KANSAS, *Appellee*, v. MICHAEL STEVEN LUTTER, *Appellant*.

Opinion filed August 4, 2000.

*Debra J. Wilson*, assistant appellate defender, and *Jessica R. Kunen*, chief appellate defender, for appellant.

*Jan Satterfield*, county attorney, and *Carla J. Stovall*, attorney general, for appellee.

Before BRAZIL, C.J., BEIER, J., and J. STEPHEN NYSWONGER, District Judge, assigned.

NYSWONGER, J.: Michael Steven Lutter appeals his conviction of attempted first-degree murder. We affirm.

Lutter asserts as a basis for his appeal that the trial court erred in denying his requests for instructions on self-defense and the

lesser included crime of aggravated assault of a law enforcement officer. Additionally, he asserts that the evidence was insufficient to support his conviction for attempted first-degree murder.

On the night of July 16, 1998, Butler County Sheriff's Deputy Jeremy Train was called to assist two stranded motorists at the Fairview Cemetery. Upon his arrival, Deputy Train noticed that Lutter was alone and appeared to be very nervous because of shaky hands and an absence of eye contact with the deputy. Lutter claimed that he did not own the car, that he did not have identification, and that his name was Greg S. Mildenberg.

At this point, the other motorist, Troy Capps, returned to the scene after calling for help. He identified Lutter as "Mike." Deputy Train, aware that one of the two motorists had given him false information as to Lutter's identity, asked Lutter to accompany him to his patrol car. Lutter then ran away. Deputy Train took up pursuit yelling, "Stop, get on the ground. You're under arrest. Quit running." Train advised dispatch that he was chasing a motorist on foot.

While in pursuit, Deputy Train lost sight of Lutter and pulled out his gun. After a very short time, Train noticed Lutter fall and closed the distance to apprehend him. Lutter, who was about 25 to 30 feet away, reached into his shirt and pulled out a gun. Train advised dispatch that the motorist he was pursuing had pulled a gun on him. He then told Lutter, "Stop. You're under arrest. Put down your gun. Don't make me shoot you. Don't make me shoot you." According to Train, Lutter then cocked his gun and said: "Fuck you. No, you are. I'm gonna kill you," and fired. Lutter denied that he said that he was going to kill Train. However, it is not disputed that Lutter fired the first shot.

The shot fired by Lutter missed Train, who returned fire with two shots, missing Lutter. After the initial exchange of shots, Lutter ran in the direction of some nearby trees, turning and shooting as he ran. Train returned fire by discharging his gun twice. One of the shots struck Lutter in the pelvic area. Lutter then fell, rolled over, and threw away his gun as ordered.

*Self-defense Instruction*

Lutter first argues that the trial court erred by not giving his

requested jury instruction on self-defense. The requested instruction was denied on the basis that self-defense was not available for resisting arrest by a police officer.

"In a criminal action, a trial court must instruct the jury on the law applicable to the defendant's theories for which there is supporting evidence. When considering the refusal of a trial court to give a specific instruction, the evidence must be viewed by the appellate court in the light most favorable to the party requesting the instruction." *State v. Scott*, 250 Kan. 350, Syl. ¶ 4, 827 P.2d 733 (1992).

K.S.A. 21-3211 codifies the right to self-defense and states: "A person is justified in the use of force against an aggressor when and to the extent it appears to him and he reasonably believes that such conduct is necessary to defend himself or another against such aggressor's imminent use of unlawful force." To justify a self-defense instruction, a defendant must present some evidence, either through his own testimony or from other witnesses, to support each prong of a two-prong self-defense test. The first prong is subjective and requires a showing that the defendant sincerely and honestly believed it necessary to kill in order to defend himself. The second prong is an objective standard and requires a showing that a reasonable person in the defendant's circumstances would have perceived self-defense as necessary. *State v. Tyler*, 251 Kan. 616, 625, 840 P.2d 413 (1992).

In *Tyler*, the defendant requested a jury instruction on self-defense for shooting a uniformed police officer executing a warrant. He believed the police officers who entered the house were robbers and were killing people. The defendant saw the officer with a gun, thought the officer was going to kill him, and shot the officer. The trial court essentially ruled that a law enforcement officer executing a validly issued search warrant cannot be an "aggressor" within the meaning of K.S.A. 21-3211. On appeal the Supreme Court held the trial court did not err in denying the self-defense instruction, but the trial court's rule was overbroad. The Supreme Court found that a self-defense instruction could be appropriate when an *unidentifiable* law enforcement officer used force to execute a warrant where a reasonable person believed the force was justified to repel an unlawful aggressor. 251 Kan. at 626.

Here the only evidence that would support a self-defense instruction is Lutter's testimony that he thought Train was going to kill him. Although Train had his gun out, no evidence was presented that indicates that he was about to use unlawful force. Lutter knew that Train was a uniformed sheriff's deputy. He was running away when Train gave chase and told him that he was under arrest. Though Lutter claims he feared for his life and shot first to defend himself against perceived imminent, unlawful aggression, his testimony discloses otherwise. Lutter admits he shot to scare the deputy so that he could escape. In addition, under these circumstances, no reasonable person in Lutter's circumstances would believe it necessary to shoot Deputy Train to defend himself from imminent use of unlawful force.

The trial court did not err in denying the self-defense instruction when considering all of the facts in this case in the light most favorable to the appellant.

*Instruction on Aggravated Assault of a Law Enforcement Officer*

Lutter next argues that the trial court erred in failing to give a jury instruction for the offense of aggravated assault of a law enforcement officer. His first claim is that it is a lesser included offense of attempted premeditated first-degree murder, and his second claim is that he was entitled to the instruction to support his theory of defense.

Whether a crime is a lesser included offense is a question of law over which the appellate court has unlimited review. *State v. Belcher*, 269 Kan. 2, 4 P.3d 1137 (2000).

Lutter relies primarily on the charging document to support the lesser included crime instruction under the second prong of the *Fike* test. *State v. Fike*, 243 Kan. 365, 757 P.2d 724 (1988), established a two-prong test in determining whether a particular crime is a lesser included offense under K.S.A. 21-3107(2)(d) (Ensley 1988). The first prong asked whether all of the statutory elements of the alleged lesser included crime were among the statutory elements required to prove the crime charged. The second prong instructed that, even if the elements of the lesser crime were not included in the elements of the crime charged, the lesser crime

might still be a lesser included crime if the factual allegations of the charging document and evidence at trial necessary to prove the crime charged would also necessarily prove the lesser crime.

Lutter's reliance on the second prong is futile, because it has been eliminated by the revision of K.S.A. 21-3107 on July 1, 1998. K.S.A. 1999 Supp. 21-3107(2) states:

"Upon prosecution for a crime, the defendant may be convicted of either the crime charged or a lesser included crime, but not both. A lesser included crime is:

(a) A lesser degree of the same crime;

(b) a crime where all elements of the lesser crime are identical to some of the elements of the crime charged;

(c) an attempt to commit the crime charged;

(d) an attempt to commit a crime defined under subsection (2)(a) or (2)(b)."

The first prong of the *Fike* test, the statutory elements test, is now set out as K.S.A. 1999 Supp. 21-3107(2)(b). Since the crime was committed on July 16, 1998, the revised statute controls.

A close look at the crimes of attempted first-degree murder and aggravated assault of a law enforcement officer reveals that the trial court did not err in denying the requested jury instruction. The elements of attempted first-degree murder are defined in K.S.A. 21-3301(a) and K.S.A. 21-3401(a). An attempt is any overt act toward the perpetration of a crime done by a person who intends to commit such crime but fails in the perpetration thereof or is prevented or intercepted in executing such crime. K.S.A. 21-3301(a). Murder in the first degree is the killing of a human being committed: (a) intentionally and with premeditation; or (b) in the commission of, attempt to commit, or flight from an inherently dangerous felony. K.S.A. 21-3401.

The elements of aggravated assault of a law enforcement officer are defined in K.S.A. 21-3408, K.S.A. 21-3410, and K.S.A. 21-3411. Assault is intentionally placing another person in reasonable apprehension of immediate bodily harm. K.S.A. 21-3408. Aggravated assault is an assault, as defined in K.S.A. 21-3408, committed: (a) with a deadly weapon; (b) while disguised in any manner to conceal identity; or (c) with intent to commit any felony. K.S.A. 21-3410. Aggravated assault of a law enforcement officer is an aggravated

assault, as defined in K.S.A. 21-3410, committed against a uniformed or properly identified state, county, or city law enforcement officer while such officer is engaged in the performance of such officer's duty. K.S.A. 21-3411.

Aggravated assault of a law enforcement officer includes the elements of simple assault, one element of which requires the victim to be apprehensive about immediate bodily harm. Attempted premeditated first-degree murder requires an attempt to kill another human being intentionally and with premeditation; apprehension of bodily harm is not an element. See *State v. Daniels*, 12 Kan. App. 2d 479, 484, 753 P.2d 300 (1987); *State v. Rodriquez-Garcia*, 23 Kan. App. 2d 847, 857, 937 P.2d 446, *rev. denied* 262 Kan. 968 (1997). Because aggravated assault is not a lesser included offense of attempted first-degree murder, the trial court did not err in denying Lutter's requested instruction on aggravated assault of a law enforcement officer on that basis.

Lutter also was not entitled to an instruction on aggravated assault of a law enforcement officer to support his theory of defense. Lutter argues that he admitted he was guilty of aggravated assault of a law enforcement officer, and, as such, he could not be guilty of attempted first-degree murder. The district court's refusal to give an instruction on aggravated assault of a law enforcement officer, he says, deprived the jury of the opportunity to find "in his favor."

Lutter's argument fails for at least two reasons. First, the trial court lacked authority to convict him of any crime other than the crime charged or a lesser included crime.

"The charging document is the jurisdictional instrument which gives the court authority to convict a defendant of crimes charged in the complaint or of the lesser included crimes thereof. Conversely, if a crime is not specifically stated in the information or is not a lesser included offense of the crime charged, the district court lacks jurisdiction to convict a defendant of the crime, regardless of the evidence presented." *State v. Horn*, 20 Kan. App. 2d 689, 692, 892 P.2d 513, *rev. denied* 257 Kan. 1094 (1995).

Simply stated, it would have been error for the trial court to instruct on a crime over which it had no jurisdiction.

Second, Lutter ignores the fact that his theory did go to the jury by way of the court's instructions that Lutter could be found guilty only if the State bore its burden to prove each element of the offense beyond a reasonable doubt. If the jury had believed that Lutter only meant to scare the officer and not to kill him, it could have acquitted him. That would have been a true finding "in his favor." The jury did not choose to do so.

### Sufficiency of the Evidence

Finally, Lutter asserts that there was insufficient evidence for the jury to convict him of attempted first-degree murder. This argument is wholly without merit. When considering a challenge to the sufficiency of the evidence, an appellate court must review all the evidence, viewed in the light most favorable to the prosecution, and determine whether a rational factfinder could have found the defendant guilty beyond a reasonable doubt. *State v. Juiliano*, 268 Kan. 89, 96, 991 P.2d 408 (1999). A review of the record clearly reveals that there was substantial competent evidence presented upon which a rational factfinder could find Lutter guilty beyond a reasonable doubt of attempted first-degree murder.

Affirmed.