NOT DESIGNATED FOR PUBLICATION

No. 112,965

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

RYAN LEE RAY,
*Appellant*.

MEMORANDUM OPINION

Appeal from Finney District Court; WENDEL W. WURST, judge. Opinion filed April 29, 2016.
Affirmed.

*Michelle A. Davis*, of Kansas Appellate Defender Office, for appellant.

*William C. Votypka*, deputy county attorney, *Susan Lynn Hillier Richmeier*, county attorney, and
*Derek Schmidt*, attorney general, for appellee.

Before STANDRIDGE, P.J, LEBEN and POWELL, JJ.

*Per Curiam*:  Ryan Lee Ray appeals from his conviction of one count of robbery.
He argues the district court erred by (1) denying a motion for a new trial based on his
claim that a State's witness presented perjured testimony and (2) sentencing him based on
a criminal history score that was not proved to a jury beyond a reasonable doubt. For the
reasons stated below, we affirm.

1

FACTS

On January 28, 2014, Margaret Hembree was working at Premier Liquor in Holcomb, Kansas. At 11:45 a.m., a man entered the store and purchased a 40-ounce Budweiser. The man then looked around the store and picked up a single can of Steel Reserve. As Hembree rang up the transaction, the man said, "I'll take some of this" and reached inside the open cash register drawer and grabbed close to $200 in cash. The man left the store and headed west.

Hembree called the police and described the suspect as male with a dark complexion wearing a black coat, a hat, and sunglasses. Law enforcement discovered matching sets of shoe prints in the snow outside the liquor store. One set of the prints was consistent with a person walking east toward the store and the second set of prints was consistent with a person running west away from the store. The second set of prints led to an alley, where it appeared that the person entered into the passenger side of a vehicle. The vehicle's tire tracks were unique, leaving three different tire tread tracks. The two front tires had the same tread and each of the back tires had different treads. This led law enforcement to search for a vehicle with these specific mismatched tires, and they ultimately located a black Pontiac passenger car matching this description. Law enforcement determined that the Pontiac was registered to the ex-husband of Stacey Williams, who was Ray's girlfriend. Because Ray matched Hembree's description of the robbery suspect, law enforcement assembled a photographic lineup that included Ray's photograph. From this lineup, Hembree identified Ray as the man who had robbed the liquor store.

Finney County Sheriff's Investigator Jennifer Rogers interviewed Ray. During the interview, Ray wore Nike shoes that could leave prints consistent with the shoe prints left outside the liquor store. According to Rogers' arrest warrant affidavit, Ray "denied having any involvement with [r]obbing the liquor store."

The State charged Ray with one count of robbery. At trial, Investigator Rogers testified for the State. During cross-examination, defense counsel asked Rogers about her interview with Ray:

"Q. And at no point did he admit to doing this robbery?

"A. That's not correct.

"Q. Okay. Tell me what's correct, then.

"A. Mr. Ray during the interview, I asked him specifically what he spent the money on, and he told me that he didn't recall.

"Q. Did you ask him what money?

"A. He immediately retracted his statement when he realized what he had said."

Defense counsel then questioned Rogers about her written summary of the interview:

"Q. So the paragraph says, I asked Ryan what he spent the money on that he took.

By the way there is no mention of this money for a little while, and then all of a sudden you ask him, where did you spend the money you took; right?

"A. Uh-huh.

"Q. And his response is, Ryan said, I have no idea . . . wait, what . . . . that I took . . . . I didn't take any money.

So—and then you're, like, I told Ryan that he could back track all he wanted. Ryan said, well ask Jake and them how much money I got and what I spend it on, I guess. You know, if I told them so much.

That was he's being sarcastic about Mr. Jake Wirth; right?

"A. That's how I took it, yes.

"Q. Okay. But the front of this place, like, what, what money, you took that as to be a confession?

"A. I did.

"Q. Or you—and that's the confession you got from him?

"A. That's an admission, one of them, yes.

"Q. Okay. What other admissions do you think he gave you?

"A.  Mr. Ray admits to being at the liquor store. He admits to purchasing the beer in the liquor store. He admits to being in Stacey's car and that Stacey took him to the liquor store.

. . . .

"Q.  . . . Did you ask him whether or not this was a split decision or just—you had it planned when you went in there?

"A.  I did ask him that.

"Q.  And he denied taking any money from the liquor store or making any of those decisions, did he not?

"A.  He stated that he did not remember taking any money.

"Q.  Okay. And he was like, taking what money? And you have a question mark, so it was a question for you?

"A.  It was.

. . . .

"Q.  Okay. So actually—and then Officer Shultz was there in there asking him questions too. The same kind, trying to ask them to whether he had—whether he had taken the money from the liquor store; right?

"A.  That's correct.

"Q.  Okay. And Officer Shultz asked him at one point and you were there, that if he is not going to confess, he is just wasting your time and the gig is up; right? . . .

. . . .

"A.  Yes. Investigator Shultz did state that the gig was up.

. . . .

"Q.  And Mr. Ray said that he's not denying that he didn't go there. He said he never denied that he didn't go to the liquor store, he said that—he didn't take any money; right?

"A.  No. He said that he couldn't admit to taking any money.

"Q.  Okay. So you think that there's a difference there?

"A.  I do, yes.

"Q.  Okay. And that difference is his confession?

"A.  That's part of it, yes.

"Q.  Because I'm going to ask you which parts you think are the confession in this case and in this report, so I'll give you fair heads up."

4

Defense counsel then asked Investigator Rogers to specifically identify where in the interview Ray had admitted to the robbery, and Rogers proceeded to identify certain portions of the interview where she interpreted Ray's statements to be incriminating. One such statement occurred when another investigator explained to Ray that someone had picked him out of a photo lineup. Ray nodded his head yes and said, "[R]ight." The investigator then stated, "I am going to say you were probably there," and Ryan said, "[R]ight." Ryan then said, "I mean that's not 100 percent, but it would be a pretty good start, I guess." Defense counsel asked Rogers, "So that you take as a confession?" Rogers responded, "Yes."

On redirect examination, the prosecutor attempted to clarify Rogers' testimony:

"Q. You talked about your investigative techniques when you are interviewing someone, right?

"A. Yes.

"Q. And, in fact, there is a discrepancy whether his statement was an admission or confession?

"A. Right.

"Q. And when you ask a question and you don't get a response or a responsive response, do you ask the question a different way?

"A. Yes.

"Q. Why do you do that?

"A. We try to elicit a response for them to tell the truth.

"Q. And are you always looking for the slam dunk, dunk, dunk, dunk confession, or are you trying to sometimes get facts that are helpful with the investigation?

"A. When you interview somebody if you can sometimes put them at the scene where they can admit to their involvement in little ways throughout the interview, it shows how they were there, how they were a part of your investigation, or a part of that crime.

"Q. And throughout your investigation or—and even—I'm going to start over. When you talked to Mr. Ray, did he admit to being at the liquor store that day?

"A. He did."

Later, during the State's closing argument, the prosecutor stated:

> "During the interview that day Mr. Ray admits that he was there, and based on the other testimony from Miss Rogers there was other admissions. And while there may not have been the big grand, okay, you got me, I did it, he admitted to facts and circumstances and other things that not only placed him at the robbery, but a statement where when asked about what he did with the money, he said, I don't remember, he goes, oh, no, I didn't do anything. I didn't take any money.
>
> "So what happens is that that was clever police questioning. You know, when you ask them—you are trying to get facts, you are trying to get bits, you are trying to place him at the scene. And when Mr. Ray—well, Mr. Ray didn't admit openly that he committed the offense, he admitted other facts and inferences that placed him at the scene, which are conclusive of his guilt."

The jury found Ray guilty as charged. Ray filed a motion for judgment notwithstanding the verdict and motion for a new trial. Ray argued, in relevant part, that Rogers had been untruthful when she testified that Ray had confessed to the robbery. Further, Ray alleged that the State, knowing this testimony to be false, had failed to correct the testimony and instead emphasized it during closing argument. In response, the State argued that Rogers' testimony was not perjured and that if there was any error it was invited by defense counsel's questioning and otherwise harmless in light of the overwhelming evidence against Ray. In denying Ray's motion for a new trial, the district court reviewed Rogers' testimony as outlined above. The judge then stated:

> "I felt at the time of trial that defense counsel was quite effective in defending that the defendant had steadfastly denied his involvement in the robbery throughout the interview, and I felt that it was effective cross-examination as to Investigator Rogers' credibility that the ambivalent responses to the pointed and leading questions of the defendant were either admissions or confessions. And I gave defense counsel, I felt, an adequate opportunity to establish that, and I felt that it was effectively done.

"I also agree that the evidence of the defendant's guilt was substantial and
overwhelming, and I don't see any substantial prejudice to the defendant from the line of
questioning . . . regarding the interview on January 31st."

The district court sentenced Ray to a prison term of 53 months with a postrelease
supervision period of 24 months.

ANALYSIS

On appeal, Ray presents two arguments in support of error. First, he argues the
district court erred by denying his motion for a new trial based on his claim that
Investigator Rogers presented perjured testimony. Second, he claims the district court
violated his constitutional rights by sentencing him based on a criminal history score that
was not proven to a jury beyond a reasonable doubt. We address each of these arguments
in turn.

*Motion for a new trial based on perjured testimony*

In support of his argument that the district court erred by denying his motion for a
new trial, Ray claims his constitutional right to a fair trial was violated when Investigator
Rogers falsely and repeatedly testified that Ray had "confessed" to the crime during his
police interview, which was contrary to her arrest warrant affidavit.

Pursuant to K.S.A. 2015 Supp. 22-3501(1), a district court may grant a new trial to
a defendant "if required in the interest of justice." Appellate courts review such rulings
for an abuse of discretion. *State v. Soto*, 301 Kan. 969, 977, 349 P.3d 1256 (2015).
Judicial discretion is abused if judicial action is either:  (1) arbitrary, fanciful, or
unreasonable; (2) based on an error of law; or (3) based on an error of fact. *State v. Ward*,
292 Kan. 541, 550, 256 P.3d 801 (2011), *cert. denied* 132 S. Ct. 1594 (2012). If a
defendant's constitutional rights have been violated during a trial, a judge's discretion to

deny a motion for a new trial is limited. "At this point, there is a greater reason for the judge to articulate the reasons for his or her 'discretionary' decision." *State v. Jenkins*, 269 Kan. 334, 338, 2 P.3d 769 (2000).

Ray contends his conviction was obtained by and through Rogers' perjured testimony. Perjury is defined as "intentionally and falsely . . . [s]wearing, testifying, affirming, declaring or subscribing to any material fact upon any oath or affirmation legally administered in any cause, matter or proceeding before any court, tribunal, public body, notary public or other officer authorized to administer oaths." K.S.A. 2015 Supp. 21-5903(a)(1). "A conviction obtained by the introduction of perjured testimony violates a defendant's due process rights if (1) the prosecution knowingly solicited the perjured testimony, or (2) the prosecution failed to correct testimony it knew was perjured." *State v. McKinney*, 272 Kan. 331, 339, 33 P.3d 234 (2001) (citing *Napue v. Illinois*, 360 U.S. 264, 269, 79 S. Ct. 1173, 3 L. Ed. 2d 1217 [1959]), *overruled on other grounds by State v. Davis*, 283 Kan. 569, 158 P.3d 317 (2006).

In this case, the alleged perjured testimony was not elicited during direct examination of Rogers by the State but instead during her cross-examination by defense counsel. In support of his claim of perjury, Ray begins by pointing out that Rogers' testimony at trial, during which she said Ray confessed to the robbery, was contrary to her statement in the arrest warrant affidavit, in which she said Ray denied having any involvement in the crime. Ray claims that Rogers' testimony at trial was especially prejudicial because a law enforcement officer's interpretation of the facts carries weight with the jury and, therefore, left the jury with the impression that Ray had confessed to the robbery in his police interview. Ray further contends that the prosecutor did not correct Rogers' inconsistent testimony but instead gave it credibility by emphasizing the testimony during closing argument.

But the record does not support Ray's claim of perjured testimony. As a preliminary matter, the record does not support a conclusion that Rogers affirmatively provided false testimony. Rogers never used the word "confession" during her testimony. Rather, she referred to Ray's statements as "admissions" during her testimony and only agreed that the statements constituted a "confession" in direct response to defense counsel's questioning and requests to point out where Ray had confessed. Although the words "confession" and "admission" have different legal meanings, defense counsel used the terms interchangeably in cross-examining Rogers and never specified the legal distinction between the two terms. See *State v. Boorigie*, 273 Kan. 18, 33, 41 P.3d 764 (2002) (defining confession as acknowledgment of guilt made by person after committing offense as compared to admission, which is the act of admitting to facts from which jury may or may not infer guilt).

Moreover, we are not persuaded that Rogers' arrest warrant affidavit and trial testimony are irreconcilable. Although Ray did not explicitly confess to robbing the liquor store, he did make certain admissions that Rogers believed implicated him in the crime. Indeed, the prosecutor made this very point on redirect by specifically pointing out the difference between a confession and an admission when the prosecutor elicited testimony from Rogers about her interviewing techniques. And during closing argument, the prosecutor conceded that although Ray had not confessed to the robbery, he had admitted to facts that inferred his guilt.

Most importantly, the record does not support an essential element necessary to proving perjury: that Rogers intended to provide false testimony. See K.S.A. 2015 Supp. 21-5903(a)(1) (defining perjury, in relevant part, as intentionally and falsely testifying before a court). Because the record does not support Ray's claim of perjury, we find the district court did not abuse its discretion in denying Ray's motion for new trial for that reason.

9

*Criminal history*

Ray argues the district court violated his constitutional rights when it used his criminal history information to increase his sentence without proving his criminal history to a jury beyond a reasonable doubt, citing *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000). Ray acknowledges that the Kansas Supreme Court has ruled against his position, but he includes the argument to preserve it for federal review. See *State v. Ivory*, 273 Kan. 44, 45-48, 41 P.3d 781 (2002). The Supreme Court has shown no indication that it is departing from its previous position and has, in fact, consistently reaffirmed *Ivory*. See, *e.g.*, *State v. Castleberry*, 301 Kan. 170, 191, 339 P.3d 795 (2014); *State v. Smith-Parker*, 301 Kan. 132, 135, 340 P.3d 485 (2014); *State v. McCune*, 299 Kan. 1216, 1234-35, 330 P.3d 1107, *cert. denied* 135 S. Ct. 457 (2014). We are bound to follow this precedent. See *State v. Ottinger*, 46 Kan. App. 2d 647, 655, 264 P.3d 1027 (2011), *rev. denied* 294 Kan. 946 (2012). Accordingly, Ray's argument on this issue fails.

Affirmed.